Case No. 18-1124-NL International Longshore & Warehouse Union Petitioner v. National Labor Relations Board Ms. Nichols, the petitioner. Ms. Salter, the respondent. Good morning, Your Honors. May it please the Court, Lindsay Nichols on behalf of Petitioner and Cross Respondent, International Longshore & Warehouse Union, ILWU. ILWU has petitioned for review of the Board's decision and order in this case because the Board erred in several regards with fundamentally unjust results. First, I would like to start by addressing the Board's contention that a different case, the PCMC case, is dispositive here. The Board urges the Court to treat this case as a, quote, continuation of the PCMC case. However, that is not accurate. This case has certain facts and circumstances that are completely separate and different from the PCMC case. The PCMC case, which came before this Court last year, dealt with ULPs that took place in March of 2005. While this case... By the employer in question. And this case involves ULPs by a predecessor employer. Well, Your Honor, the employer at issue in this case is not a successor as the Board found. Now, in the PCMC case... Just to be clear, it also involved ULPs by your client. Yes, that is correct, Your Honor. Your client then and now. That is correct. But the issue here is that the ULPs by my client, ILWU, flow from the employer and whether the employer has improperly recognized the ILWU and not recognized the IAS. It was accepting... I didn't mean to... No, no, go ahead. I'm going to let you finish. I just put a marker here on your client. Now, go ahead. The way I understand it, your client's liability here essentially... I think you just said this. It flows from the ULPs of the respective employers. Yes, correct. If POH in this case is found to be a successor with an obligation to recognize the IAM in July of 2013, which is what the Board did, then if that POH recognized ILWU, ILWU accepted that recognition, there is a violation. However... And the successorship issue turns on whether the old bargaining unit still applies. Remains appropriate. Correct. And the dispute, the nub of the dispute is whether the NLRB defendants get to argue about... Unit appropriation. ...change. Correct. The changed circumstances and the Board says no because in this case PCMC has unremitied ULPs. Yes, that is the Board's rationale. And the gist of your argument is the key difference between this case and our last one is those are ULPs by what you say is a different employer. Yes, it's a different employer. Correct. So why, I mean, isn't the normal rule of, I don't know, corporate law that a purchasing company assumes all the liabilities of the predecessor company? Well, I don't know about corporate law, but I'm going to go back to the NLRB's precedent, which is that the unit has to remain appropriate the time that the ULPs are committed. So here, that's July 2013. That's when PAOH hired mechanics. And the question needs to be, was the unit appropriate in July of 2013? The Act is supposed to address the realities of the workplace and be a flexible statute that takes that into account. And here what the Board did is they said, cover our eyes, plug our ears, we don't care what happened from 2005 through 2013, this unit just stays in place. That is what the Board did. But the cover your eyes and ears point would be clearly right as to ULPs of PAOH, right? That's what we said the last time around. And PAOH allegedly, according to the Board, committed ULPs in July of 2013. So on that date, there should be an analysis of what are the facts and circumstances here? What does the unit look like? But the general principle, if you have no successorship issues, the general principle is you don't consider unremitied ULPs. If you're talking about the same employer, correct. And that is what the Board affirmed here with PCMC when that issue was raised. Your whole position rises or falls with the proposition that that principle should not be extended to a situation where the ULPs are with, I won't say predecessor because that's question begging, but the ULPs are committed by, I'm not sure this is right, but the selling corporation, and those can't be charged to the buying corporation. And the Board pointed to no case law saying that ULPs from another employer then foreclose a future employer eight years later from even looking at the facts and the realities on the ground to determine if the unit remains appropriate. Right. But that just brings me back to what I would have thought is a pretty basic background principle, which is I'm an acquiring company. I buy a company. I assume all of the legal liabilities of the company that I've purchased. And if one of those liabilities is being on the hook for unremitied ULPs, well, that's part of what I've assumed. Respectfully, the complaint alleged in the Board found that PAOH was a burn successor. And flowing from that, that ILWU also violated the act. Now, the burn successor test lays out what is required, and the issue is the unit appropriateness. There's nothing that speaks to whether or not purchasing a company or not means you're assuming liabilities. And importantly here, that's not what happened, actually. PAOH had a subcontract with PCMC and notified PCMC that it was no longer going to have that subcontract and not renew. And then PAOH took the work in-house and directly employed these mechanics, along with an entire other ILWU workforce of hundreds of clerks and longshoremen working all together at that terminal. I think another important thing to keep in mind here is not just the fact that there's no case loss, Just to be clear, your argument as to the bargaining unit is not with respect to the people working at the area taken over from PCMC, but as to completely different areas of longshore work. Well, the argument that we are making is that for several reasons, one being that the mechanics that had been working for PCMC were accreted to the coast-wide bargaining unit. And yes, our argument is that the ILWU has a coast-wide bargaining unit comprised of longshoremen. So it's an accretion argument. Yes. One that we have described as narrow, one that we are careful about accepting because it deprives the members of the union, the workers of deciding which union they want to belong to. It's not the normal argument or the more common argument about which bargaining unit is appropriate, correct? Correct. That is correct. The accretion, but we also are making several other arguments about the unit appropriateness. We argue that the historical unit no longer remains appropriate due to specific facts and circumstances. Hold on. I want to ask about the other question, if you're finished. Yeah. That Judge Katz was asking about, just to go a little bit further. So I'm having a little difficulty understanding why it should be that the board should have to ignore the unfair labor practices of the predecessor of PAOH. So one of those unfair labor practices was this union security clause. Yeah. So the fact that the employees are a member of ILWU can be attributed to that unlawful labor practice, regardless of whether PAOH caused the practice or not. It's the circumstances that occurred in between. You say there were changes in between, but the board says that the critical point here is that there were unfair labor practices which affected the employees' choice of union and which union was in control at the time. And whether they are attributed to PAOH or not, which the board says they're not attributed to, that's not their fault, they are nonetheless still there during that period. And that upsets any kind of nappies that you might argue for. I would request the Court to take into consideration the timeline we have here in considering what Judge Garland said. These unfair labor practices of PCMC took place on March 31, 2005. And they were never rectified. On February 9th, or February 2009, the ALJ said there were no unfair labor practice charges. In June 2013, at the very end of June, the board issued the PCMC first decision, overturning the ALJ's decision. That decision was invalid, as found by Noel Canning, and it was not until June 17, 2015 that the board issued a valid decision saying that there were unfair labor practices. I don't see why that matters. That is, there were unfair labor practices. We said so. This Court, another panel to which we are bound, said so. So it doesn't matter whether it went back and forth. The point is that there were unfair labor practices, and they were the kind of unfair labor practices, like a union security clause, which make it very, very difficult to think that any change in the bargaining practices made a difference. And those are there no matter who's responsible for them. In bargaining history, as you said that ILWU was the labor union in place, is one among many factors of accretion. There are several other factors. The issue here is that the board did not receive ILWU's evidence going to all of the factors of accretion, some that ILWU's representation have no bearing on. The board did not take this evidence in, look at it, and say, nice try. Accretion is something that we carefully analyze, and we only apply in very severe circumstances. PAOH is not complaining, correct? They're not here. PAOH no longer exists. Yeah. And they're, well, they settled the case, and they're not complaining, right? Correct. So the only people complaining is the ILWU, right? Well, PAOH, as I said, here, yes, that is correct. I'm sorry. In this case, the only people making this claim is the ILWU, and they were responsible for the unfair labor practices during this period because they accepted recognition when they shouldn't have. So I don't, I'm, even if we take the position that the entity has to themselves be responsible, this union is responsible, and this union is the only one making a complaint here. Well, respectfully, Your Honor, this union here in PAOH, we would, as we argue, is not responsible because by 2013, ILWU did have the uncoerced majority support of the unit. How is it possible to know that given the union security clause? Well, ILWU attempted to put in evidence with regard to that. There were a number of mechanics who were members of ILWU prior to 2005, prior to PCMC's unfair labor practices. There were a number of mechanics who applied for jobs in this, to work steady for PCMC as mechanics, knowing that they were, it was a joint process, and ILWU would be their representative. There was another group of... Knowing that ILWU would be their representative because ILWU had committed, had failed to recognize its obligations before. I don't understand. They were embedded, and that's the whole point of what the NLRB is arguing here, that people had to accept ILWU if they wanted to work. Well, as I said, ILWU tried to put in evidence to the contrary. I think the answer is that certainly, at least, at a minimum, with regard to the individuals who were members of the ILWU prior to 2005, that cannot be said. And that was actually held in the PCMC case, when it was ordered that those individuals did not have to have their dues reimbursed. And so ultimately, though, the evidence that ILWU tried to present to the board to have its day in court, to have its due process rights, to have its defenses in its case fully and fairly litigated, were absolutely denied. ILWU was told, you can't put on any of your defenses, you can't say one word about whether or not the unit was appropriate, and you are not allowed to put in any evidence about that. Unfortunately, the Byrne Successorship Test requires a determination that the unit remained appropriate. And by barring all of that evidence, the board did not have a record upon which to make that determination. Do you agree that if it had been PCMC itself and not PAOH, that PCMC could not have put in that evidence? That is what this court held. Indeed. So, yes, I defer to this court's decision when they rejected that request from PCMC. So the mere fact that you can't put in evidence doesn't itself violate due process? Well, in that case, it was different. PCMC was asking for that evidence to be put in for change to circumstances after the fact. That was evidence that it was using after it had committed ULPs. And there is case law that an employer who commits ULPs cannot rely on the effects of its own ULPs when trying to argue that it did not occur. And should it be different whether it's its own ULPs or someone else's ULPs, if it's affecting the same employees? Your Honor, there's no case law to that point. And to look at the facts and circumstances on the ground. The absence of the case law may mean no one's made this argument before. But that doesn't mean that the board can't set it out now. And then the only question for us is, is it reasonable or not? Is it arbitrary and capricious to make that determination? I haven't heard why it's arbitrary and capricious, other than there isn't a case exactly on point. Well, Your Honor, it is because the purposes and policies of the Act are to protect workers' Section 7 rights to look at the workplace and address the realities of the workplace. In these facts and circumstances, with eight years going by, and eight years of potential changes that I believe you tried to put evidence in about, it is fundamentally unjust and does not further the purposes of the Act to ignore all of that time and not look at what the unit looked like in July 2013. But it wouldn't be fundamentally unjust to do that if the employer was the same employer. Well, there's clear authority that an employer cannot rely on its own unfair labor practices. I'm trying to get past the authority to the reasoning here. The union, leaving aside the fact that your union was found in violation, in the normal circumstance, the argument just made is that the employees are entitled to make different choices about their union and their bargaining unit. I don't see why it's different whether the employer or the successor is the one who committed the EULP that affects their choices. Well, in order for a successor to have any duty to recognize and bargain with the unit, the unit must remain appropriate at that date that the successor. I feel like it's a circular sort of issue here, and I think that's what we tried to argue, is that by not looking at the facts and circumstances as they were in July 2013, the board was unable to do a proper burns analysis. The board should have looked at that information and those facts. The board's brief claims that they did do that, and they cite certain things that the General Counsel put in as evidence, but that just goes to show that if you're going to look at facts and say that you're doing an analysis post the EULPs committed by PCMC, and the General Counsel got to put in evidence about that, and then ILWU has denied that right, then there's clearly a denial of due process. What the board should have done is taken in all of the evidence on that, considered it, and made a determination of whether or not the unit remained appropriate. I see my time is up. Good morning, Your Honors. May it please the Court. Greg Sautter for the National Labor Relations Board. I'd just like to make a few points. Essentially what the ILWU's argument is is that too much time has passed at this point, and it's been so long since the original EULPs in this case that we should just brush that aside and take ILWU's representation of the historical unit as a fait accompli. To do that, to do what ILWU proposes, would be to brush aside the rights of the employees, the members of the historical unit, to decide which union they will choose to represent them. And that's why we're here right now. As to the issue that Ms. Nicholas raised about ILWU not being able to introduce its evidence before the board, there's a simple reason for that. As this Court found, as Chief Judge Garland mentioned, in PCMT3, this Court found that there should not be that it would not look at any evidence of accretion of changed circumstances on the unit after the original EULP occurred. From unremitied EULPs by that very employer. By that very employer, right. And every case, I think, that the ALJ and the board relied on below was like PCMC in that respect. True, Your Honor. And the rationale, part of the rationale of those cases is that an employer should not be able to benefit from its own misconduct. That's correct. And if that's the key rationale, then that principle wouldn't necessarily extend to unremitied EULPs by the previous employer. Right. And you might have a perfectly good argument for making that extension along the lines that the Chief Judge was suggesting, but that wasn't the reasoning below. Well, the reasoning below, Your Honor, is that when you have a successor employer that is found to be a burned successor that meets all those criteria, that employer steps into the shoes of the predecessors, into its predecessors' shoes. The reasoning below is that this case is controlled by decisions standing for the proposition that an employer can't benefit from its own unremitied EULPs, which just doesn't cover this case. But as the board mentioned in its decision, the key issue is whether the PAOH is a burned successor to PCMC, because if it is, then it inherits PCMC's duty to bargain with the legitimate union representing the historical unit employees, and that legitimate union is IM, not ILWU. Well, it may or may not be, right? That question depends in part on evidence that the board didn't consider, because they said as a legal matter this is irrelevant because it flows from unremitied EULPs. Right. So this just keeps coming back to the question whether unremitied EULPs of the prior corporation must be ignored. Okay, well, let's talk about that. You're right. There is no clear case on point on that issue. However, there are two cases that we rely on in our brief. Proxy communications. In the red brief. In the red brief. Which was not the rationale below, but even if I give you that, most of those cases say is that the successor corporation can be charged with the unremitied EULPs of the predecessor corporation. I'm sorry. If they know about it, if they knew about it. In that it's slightly different, Your Honor. What those cases say is that a successor company cannot claim to have a good faith doubt as to the majority status of the previous, you know, the rightful union, IM in this case, because it is aware of the unfair labor conduct of its predecessor. Because it is aware. Right. So those cases would, it would have been a perfectly reasonable order for the board to have said, the governing principle is proxy communications, and therefore the relevant question is whether PAOH knew about PCMC's unremitied EULPs when they made all these decisions and then addressed that question. But they didn't. Well, actually, no, Your Honor. The board couldn't have done that because those are two separate issues. The first is whether PAOH is a successor employer. And there's no issue of knowledge of whether unfair labor practice has happened before that comes into that analysis. The defense of whether they're a successor employer under Burns turns on whether the bargaining unit is still the right one. Correct. But it does not turn on whether the, but that's an objective analysis. It does not turn on whether the successor employer knew that the predecessor engaged in unfair labor conduct. So that supports Judge Katz's point, which is proxy doesn't even apply to this argument. And so there's just no cases on this. And that's how I answered Judge Katz's. I said there are no cases governing. Proxy is one that I would direct the Court to that is sufficiently similar that I think the reasoning in proxy would apply here. In proxy, you had a predecessor that committed unfair labor practices. A successor came along. I don't know if there was an argument over whether the unit remained appropriate, but the argument was that the successor had good faith doubt as to the union's majority status. The Board said, you can't do that. In this case. You can't do that because you're at notice. Because you know what happened. Because good faith by definition involves, you know, you can't pretend that you don't know what occurred before. In this case. I see where you're going with all of that. But it still seems to me you have a Chenery problem because this isn't the rationale of the orders under review. No, the rationale of the order, because like I said, proxy doesn't directly govern this case. The rationale of the order here is that you have a burnt successorship, a successor employer that sits in the shoes of its predecessor. And simply because there is now a new employer and time has gone by, that does not mean that the rights of the employees who back in 2005 were forcibly switched from one union they had chosen to another that they had not chosen. That doesn't mean just because there's a successor employer that those rights just go out the window. What about the question about the ILWU being responsible, at least equally responsible as the employer for the ULPs? Why isn't that or is that an answer to this question? They're not a successor. They're the actual union. They agreed to a contract that turned out to be unfair labor practice with the Royal Union, including in particular the union security clause. Why isn't that part of the or is that part of the argument? Oh, certainly. The reason we spend so much time on successorship in this case is because if POH was not a burnt successor, then it could recognize whatever union it wanted, and ILWU would not be violating any board law by accepting recognition. So that's why the core issue is a successorship. But once successorship is established, then absolutely ILWU isn't an innocent bystander. ILWU twice accepted recognition for a group of employees that it did not represent. And in fact, it knew fully at the time that it did not represent them.  The missing link is the succession because if POH was a brand new employer, then it could recognize any union and ILWU would not be on the hook. But absolutely, if ILWU had not of its own free will accepted POH's recognition, we wouldn't be hearing. You used the word missing link. You mean the alleged missing link under the petitioner's view? Right. Yes. You think the link is there? Oh, yeah. The link is absolutely there. Sorry. I apologize. Yes. If that link was missing, there would not be any connection. You're right. And I think unless you have any other questions about any of the other issues in this case, I will just set aside my time. Thank you. Thank you very much. He's left you four minutes, but we'll give you two. Sorry. Because he wasn't really leaving them for you. A few points to respond. It is not that ILWU is saying is giving a fit, a compli. Rather, it's the opposite, as we've discussed earlier. The board is saying we don't care about March 31st, 2005 through July 1st, 2013. And that seems much more a fait accompli. And brushing aside eight and a half years of changes and developments seems to be much more troubling when you look at the policies and purposes of the act. I wanted to point out that, as the board has said, that whether or not the unit is appropriate is an objective analysis. If you look at the board's brief at page 28, they say it is a, quote, fact-intensive analysis. And, quote, there's a heavy evidentiary burden. However, there was no factual analysis done here, and much of the facts and evidence that was attempted to be placed in the record was rejected. So if we go with what the board says, all of the evidence ILWU attempted to present needs to be put into the record. It should be important to note that the general counsel at trial never even identified who exactly was in the unit. There were exactly two documents put in that even listed names by the general counsel, whereas the ILWU attempted to put in who was in the unit, their development over time, where they worked, had they ever been in the historical IAM unit, had they left the unit. Things that are very important to determine whether a unit remains appropriate in July 2013. The board cites this proxy communications line of cases for the proposition that PAOH could be charged with the unremitied ULPs PCMC, and it would be permissible to just ignore all of them. If PAOH had knowledge of them, do you agree or disagree with that proposition? I respectfully disagree. I believe that proxy communication stands for the fact that an employer cannot assert as a defense good faith doubt about majority status in a unit if they had knowledge of the unremitied unfair labor practices. And good faith doubt as to the majority support within a unit is separate and apart a different issue defense than whether or not the unit remained appropriate on the date of the recognition. I have no more time. Thank you. Excellent. Thank you. We appreciate the arguments. We'll take them under session. Stand please.
judges: Garland, Katsas, Williams